DIGORY W. BAKER *et al.*

*v.*

AARON H. McCLURG *et al.*

*Opinion filed June 19, 1902—Rehearing denied October 8, 1902.*

1. FIXTURES—*when fixtures are removable.* The fact that ovens and other trade fixtures are built in openings left in the building for that purpose according to the plans approved by the lessee, who built the ovens and placed the fixtures therein, does not, of itself, preclude their removal at the expiration of the lease, if, after their removal, the openings left in the building can be closed without material injury to the freehold.

2. SAME—*removable trade fixtures may include ovens and boilers.* As between the landlord and tenant, removable trade fixtures may include boilers, ovens and other trade appliances attached by the tenant, during his possession, for purposes of trade, if they may be removed without injury to the freehold.

3. SAME—*mere fact that removal will injure fixture does not destroy right of removal.* The fact that the masonry of ovens and boilers must be taken down brick by brick and that the iron work must be taken apart does not destroy the tenant's right to remove them at the expiration of the lease, where they are not built as a part of the building but within it, and not attached to the main structure, its walls or foundations.

4. SAME—*when the right of removal is not lost by taking new lease.* If, during the term, a new lease is made for the express purpose of releasing a retiring partner of the lessee firm, the fact that the new lease contains no reservation for the removal of trade fixtures does not take away the lessee's right to remove them, where they were placed in the building with that intention and are removable without material injury to the freehold.

*Baker* v. *McClurg*, 96 Ill. App. 165, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

The following statement of the case was made and opinion rendered by the Branch Appellate Court for the First District:

*Statement.*—"Appellants are owners of premises on Green street, Chicago, upon which, pursuant to an agree-

ment in writing made in October, 1890, they erected a two-story and basement brick building, and by a written instrument dated January 15, 1891, leased the same to appellee McClurg and one George C. Aldrich, at that time composing the firm of McClurg & Aldrich. The building was erected and was rented to be used for a bakery. Upon taking possession under their lease said McClurg & Aldrich proceeded to erect three ovens in the building, and also placed therein an engine, boiler, shafting, pulleys, wheels, etc. The principal oven, called a 'reel' oven, extended from foundations laid in the earth below the basement floor, through the first and second stories, nearly to the roof of the building. Square openings had been left in the several floors, including the cement floor of basement, when the building was erected, pursuant to the plans and specifications agreed upon between the parties, in order to enable said oven to be so built. This oven was built by the tenants upon foundations of its own, contiguous, but not attached, to the north wall of the building. These foundations were laid (necessarily, because of the projection of certain of the footings of the building's foundations within the space to be used for the purpose,) partly upon said footings, the rest of the oven's foundations being laid upon or within the earth. Upon said foundations an arch was erected, on which the oven stands. The other two ovens erected by the tenants, known, respectively, as the 'Fish oven' and the 'Peterson oven,' rest likewise upon separate brick foundations, in part resting also upon the footings of the building wall, but do not extend quite to the basement ceiling. The boiler is enclosed in a brick masonry jacket, separate from the brick wall of the boiler room in which it stands, said room being outside of and connected with the main building.

"The lease to McClurg & Aldrich provided for a term of ten years, from January 15, 1891, until January 14, 1901. A new lease was, however, made for the balance of the

same term by mutual agreement, December 2, 1891, owing to the withdrawal of Aldrich from said firm and his desire to be released from liability. It was executed by and between appellants and appellee McClurg alone. Except that the lessee is McClurg alone, the second lease is in substance and effect practically identical with the original. It contains, however, one additional provision, viz., a consent of the lessors to its assignment to the McClurg Cracker Company. The business of McClurg and the McClurg Cracker Company, together with the leasehold interest, has since been transferred to the National Biscuit Company, but no formal assignment of the lease was made by McClurg.

"Just before the expiration of the end of the term the appellees were commencing to remove the ovens and fixtures, when appellants filed a bill to restrain such removal and obtained an interlocutory injunction. Upon hearing, that injunction was dissolved and the bill dismissed. From this decree the present appeal is taken."

*Opinion.*—"The question to be determined is, whether the appellees are entitled to remove the ovens, engine and other fixtures erected by them upon the leased premises and claimed as trade fixtures.

"It is contended in behalf of appellants, first, that the building upon the premises leased to McClurg & Aldrich January 15, 1891, was erected and designed as a bakery, and that the ovens were erected by the tenants in pursuance of the same purpose and design and became therefore a part thereof; second, that the removal of the ovens would result in material injury to the premises; third, that such removal would destroy their identity as ovens and their character as fixtures; and it is urged the law is that fixtures are not removable where they are placed in a building to carry out the design and purpose for which the building to which they are attached was erected or to permanently increase its value for occupation, nor where their removal would injure the freehold or destroy

their identity as fixtures. In the second place it is contended, that when the original lease to McClurg & Aldrich was canceled, appellee McClurg took a new lease of the same premises without reserving therein any right to remove the fixtures in controversy, and that he thereby lost the right to remove them, even if such right had before existed.

"The facts in the case are mainly settled by stipulation. There are, however, according to appellants' counsel, two controverted questions of fact, viz., whether the ovens were erected to carry out the purposes for which the building itself was designed, and what, if any, injury would result to the premises from their removal. But the alleged controversy is, rather, what conclusions are to be drawn from conceded facts, than as to the facts themselves. It is stipulated the building was erected in accordance with plans prepared and submitted to the lessees, McClurg & Aldrich, and by them approved as suitable for the uses to which they were intending to put it. They intended to and did use it as a bakery, and with that intention and for that purpose erected the ovens in question. So far, therefore, as the building was planned for the purpose for which the tenants intended to use it, both building and ovens were constructed with the same immediate end in view. But it does not necessarily follow from that fact that the ovens and trade fixtures became thereby a permanent part of the building, or so entered into and influenced its character and construction that without them the ultimate design and purpose of the building would be frustrated. It is doubtless true that they were put in for the same purpose for which the building itself was intended during the term of the lease; but that fact is not enough to justify the conclusion that the building was designed and intended for a bakery, and nothing else, after the expiration of the term, and that it is unsuited to other uses. The evidence does not so indicate. The only material difference of construction

distinguishing it from other buildings designed for any business requiring the use of machinery, appears to be that openings were left in the floors for the erection by the tenants of the 'reel' oven. With these closed, we find in the evidence no reason to suppose that the building was not designed and is not adapted for any of the ordinary uses of buildings of its general character as well as for a bakery. If so, the bakery fixtures are not irremovable because of the purpose for which the building was erected; neither did they enter into its ultimate design and purpose to any greater extent than ordinary trade fixtures put in by a tenant and suited to his special business. Nor is it apparent that the building itself will be injured by their removal. It is true, the removal of the 'reel' oven would leave the original openings in the two floors, as well as in the cement floor of the basement. But these were left when the building was erected, and if they should be filled in by the tenants to correspond with the rest of the building, as may be the latter's duty in equitable compliance with their covenants, it is difficult to see wherein the freehold would be injured. It is also true, doubtless, that the brick structure of the ovens, when removed, would have to be taken down brick by brick; but this need not be injurious to the building or premises if the work should be properly done. We conclude, therefore, that the facts do not justify the conclusion that the ovens became necessarily a part of the building by reason of the purposes for which both building and ovens were constructed, nor that the removal of the fixtures would necessarily injure the freehold.

"But it is said that fixtures are not removable if by removing them their identity and character as fixtures are destroyed. That taking down the ovens brick by brick, and removing the iron of the structure piece by piece, would change the form of the original structures for the time being is made clear by the evidence and is obvious. It could never again be precisely the same

structure of brick and mortar as before, but the iron work would doubtless retain its identity even though taken down in pieces and subsequently re-erected, and there is evidence tending to show that the ovens can be profitably removed and re-erected by the tenant.

"The ovens in question were, when erected by the lessees, as the evidence tends to show, intended for trade fixtures. This intention is clearly indicated by the conduct of the tenants. The ovens were not attached to nor made a part of the structure of the building. They were built within it but not of it. They were not joined to its walls nor to its foundations. These facts of construction certainly tend to sustain the contention of appellees that it was the intention at the time they were put up to have them removable. There is other evidence of such intention and understanding afforded by the bills of sale transferring the machinery, fixtures, ovens, etc., from Aldrich to McClurg, from McClurg to the cracker company, and from the latter to the biscuit company. That this was also the view of the landlords is, we think, apparent from the conduct of the latter. One of the appellants testifies to having visited the premises shortly before the expiration of the term of the leases, looking the fixtures all over, including the engine, boiler, shaftings and steam heating plant, and asking appellee McClurg 'to put a price on it, and also to include the ovens.' He states that McClurg told him he would not include the ovens, and that afterward he (appellant) 'again asked him to throw in the ovens; we would buy the whole thing.' Whatever may be the effect of this testimony in other respects, it does tend to show an understanding on the part of both parties at that time that the fixtures were the property of appellees, and removable. There is no evidence of any other intention or understanding during the whole of the ten-year term.

"There is some conflict of authorities as to whether fixtures are removable when by removal they are liable

to suffer substantial injury. In *Collamore* v. *Gillis*, 149 Mass. 578, it is said that 'in determining whether an addition by the tenant to a leased building is removable or not by him during his term, the chief thing to be considered is the mode of its annexation, and whether it can be removed without substantial injury to the building or to itself. The intention with which it was put there, though often an element to be considered, is of secondary importance. We are not inclined to extend the right of removal so far as to include a thing which cannot be severed from the realty without being destroyed or reduced to a mere mass of crude materials.' But in *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519, it is said: 'The tendency of the modern cases is to make this a question of what the intention was with which the machine was put in place.' The rule in Illinois is liberal in favor of the tenant. As between him and the landlord, removable trade fixtures may include all erections made for the purposes of trade during tenancy 'which he may have attached to the freehold while in possession, such as soap-vats, engines, a working colliery, pans used in manufacturing salt, brew-houses, furnaces, green-houses and hot-houses erected by nurserymen and gardeners.' (*Moore* v. *Smith*, 24 Ill. 513.) Ordinarily such things can not be removed without injury to the material composing them. No reason is perceived why, in the nature of things, an exception should be made in the case of ovens, engine, boiler and other fixtures such as those here in controversy. It has been held that a two-story house, with brick chimney and foundations, was so removable. (*VanNess* v. *Pacard*, 2 Pet. 413.) In *Wiggins Ferry Co.* v. *Ohio and Mississippi Railroad Co.* 142 U. S. 396, it is said: 'Indeed, it is difficult to conceive that any fixture, however solid, permanent and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term.' In the case of *Moore* v. *Wood*, 12 Abbott's Pr. 393, it was held that a brick chim-

ney extending through the roof and with its foundations three feet in the earth, erected for trade or manufacturing purposes by the tenant, might be removed. The court says: 'It was not movable without taking it down, and was in every respect a ponderous structure. Nevertheless, under the circumstances of the present case it was not a fixture. The rigor of the ancient law of fixtures has yielded, and must continue to yield, to the contingencies of modern times. The law must take notice of trade and manufactures and their wants, and afford to them adequate and appropriate protection.'

"It is contended by appellees that the intention with which the fixtures were put in place, as shown by the evidence in the case before us, is the chief test as to whether they are removable by the tenant before the expiration of his lease. This is conceded by appellants to be the rule if such fixtures may be removed without injury to the freehold or themselves; but, as we have said, the evidence fails to sustain appellants' claim that their removal would, in this case, necessarily injure the freehold, and authorities above referred to are to the effect that the fact that its removal requires the taking to pieces of a fixture, such as a brick chimney or a brick oven, is not conclusive against the tenant's right. Upon principle, it would seem that the mere fact that its removal may cause some injury to the fixture itself, though not injuring the freehold, ought not to destroy the right. The landlord is not affected by an injury done by the tenant to the latter's own property. It may still be valuable to the tenant, even though he be put to extra expense to repair or rebuild; and if, when the trade fixture was erected, the tenant, by his conduct, manifested the intention to retain ownership and remove it at the end of the lease, it appears that such intention should control even if such removal necessitates a re-construction of the fixture. (Ewell on Fixtures, p. 96.)

"Identity is not necessarily lost by demolition. It is said in *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 522, before referred to: 'The intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifested by his act.' In this State the intention so manifested is regarded as the principal test to determine the right of removal. In *Sword* v. *Low*, 122 Ill. 487, it is said: 'To determine the irremovable character of a fixture three tests are by the modern authorities applied, viz.: First, actual annexation to the realty or something appurtenant thereto; second, application to the use or purpose to which that part of the realty with which it is connected is appropriated; and third, the intention of the parties making the annexation to make a permanent accession to the freehold,' Here no such intention appears, but the contrary. It is further said in that case: 'It is apparent, from the authorities, that however permanently attached, if removable without material injury, the intention, to be inferred from the circumstances, and the relation of the parties to each other and to the realty, or as shown by the evidence, will be of controlling and decisive importance.' To the same effect are *Fifield* v. *Farmers' Nat. Bank*, 148 Ill. 163; *Hewitt* v. *General Electric Co.* 164 id. 420; *Kelly* v. *Austin*, 46 id. 156.

"In the present case, the fixtures in controversy being so removable and having been erected with that intention, were subject to be taken away by the tenant, unless, as is contended by appellants, the right to removal was lost by acceptance, after the erection of the fixtures, of a new lease, which contains no express reservation of the right to remove. In *Sanitary District of Chicago* v. *Cook*, 169 Ill. 184, it is said: 'But the great weight of authority seems to be, that where, at the expiration of a lease during which trade fixtures had been erected on the premises by the tenant, a new lease is taken of the same premises containing no reservation of any right or claim of the tenant to the fixtures still remaining on the prem-

ises and without recognizing the right to remove them, such fixtures erected under the former lease cannot be removed by the tenant during or at the end of the new lease, notwithstanding his actual possession of the premises has been continuous.' And it is further said: 'The reason given is, because the fixtures set up on the premises at the time of the lease are part of the thing demised, and the tenant, by accepting a lease of the kind without reserving his right to the fixtures, has acknowledged the right of his landlord to them, which he is afterward estopped from denying.'

"Applying the foregoing rule to the case at bar, the only question we deem it necessary to consider is, whether, in fact or law, the alleged cancellation and surrender of the original lease to McClurg & Aldrich and the execution of a new instrument to McClurg alone constituted a new lease of the premises, including the fixtures in dispute. It will be noted that this transaction occurred, not at the expiration of the original lease, but during its term, which continued to run on as before. All that was in reality done was just what was intended to be done, viz., to release Aldrich from liability as a lessee thereunder, in accordance with his wish to be relieved because of his retirement from the firm. It appears that upon one copy of the original instrument the appellants wrote the words, 'Canceled December 2, 1891.—D. W. & H. Baker,' and handed said copy to Aldrich, the retiring partner and lessee, but retained in their possession the other copy or duplicate, which was uncanceled and unsurrendered. It is true that a new lease was made out and executed by McClurg alone, but it was for the balance, only, of the same term, at the same rental, payable in monthly installments of the same amount, at the same place, to the same parties. It was but a reiteration of the former lease. It contained, in addition thereto, a permission for assignment by McClurg to a corporation,—the McClurg Cracker Company,—which he seems to have

been intending to organize or had organized to take in the business; but this certainly did not make it a new lease. It is evident that there was in this transaction no intention to create any new or different liability on the part of McClurg, the lessee. The purpose, as shown by what was done, was to release Aldrich, and what was done was, in legal effect, no more than if an endorsement had been made on the original instrument to the same effect. We are compelled to the conclusion that the parties did not intend to, and did not in fact, make any new or additional demise or create any new obligation for the tenant, and that the lessee, McClurg, did not intend to, and did not in fact, accept any new obligation, —in other words, that the transaction did not amount to a new leasing of the demised premises, and had no effect whatever upon the ownership of the trade fixtures in controversy and the right to their removal.

"The judgment of the circuit court must be affirmed."

EDWARD W. CULLEN, for appellants:

A court of equity will restrain a tenant from doing acts contrary to his covenants. Taylor on Landlord and Tenant, sec. 691; 10 Am. & Eng. Ency. of Law, 809; *Gauggel* v. *Ainley*, 83 Ill. App. 582.

Although a lease is really intended by the parties as a substitute for a former lease, yet its execution and acceptance by the tenant must be held as amounting, in law, to a surrender of the former lease, and of all the rights to which the defendant was entitled thereunder. *Hoag* v. *Carpenter*, 18 Ill. App. 555; *Jungerman* v. *Bovee*, 19 Cal. 355; *Livingston* v. *Potts*, 16 Johns. 28; *VanRensselaer* v. *Penniman*, 6 Wend. 569; *Ryan* v. *Kirchberg*, 17 Ill. App. 132; Wood on Landlord and Tenant, sec. 492; Taylor on Landlord and Tenant, (7th ed.) sec. 512; *Coleman* v. *Mabberly*, 3 T. B. Mon. 22; *Abell* v. *Williams*, 3 Daly, 17.

If the tenant accepts a new lease, in which there is no reservation of right to remove fixtures, the tenant's

right to the fixtures is lost. *Sanitary District* v. *Cook*, 169 Ill. 184; *Gauggel* v. *Ainley*, 83 Ill. App. 582; *Laughran* v. *Ross*, 45 N. Y. 792; *Watriss* v. *Bank*, 124 Mass. 571; *Carlin* v. *Ritter*, 68 Md. 478; *Hedderick* v. *Smith*, 103 Ind. 203; *Talbot* v. *Cruger*, 151 N. Y. 504; *Stephens* v. *Ely*, 162 id. 79; *Marks* v. *Ryan*, 63 Cal. 607; Wood on Landlord and Tenant, sec. 532; Tiedeman on Real Estate, sec. 7; Taylor on Landlord and Tenant, sec. 532.

Fixtures are not removable if by removing them their identity and character as fixtures are destroyed. *Wake* v. *Hall*, 7 Q. B. Div. 295; *Callamore* v. *Gillis*, 149 Mass. 578; *Cubbins* v. *Ayres*, 4 Lea, 331; *Whitehead* v. *Bennett*, 27 L. J. 474; *Campbell* v. *Roddy*, 44 N. J. Eq. 244; *Ombomy* v. *Jones*, 19 N. Y. 234; *Ford* v. *Cobb*, 20 id. 344.

Whatever is placed in a building to carry out the purpose for which it was erected or to permanently increase its value for occupation becomes a part of the realty, though so fastened that it may be removed without injury to itself or to the building. *Fifield* v. *Bank*, 148 Ill. 163; *Cross* v. *Weare Commission Co.* 153 id. 449; *Hacker* v. *Munroe & Son*, 176 id. 384; *Bank* v. *Exalter Machine Works*, 129 Mass. 542; *Homestead Land Co.* v. *Becker*, 96 Wis. 219; *O'Connell* v. *Blood*, 123 Mass. 47; *Meagher* v. *Hayes*, 152 id. 152; *Hopewell* v. *Bank*, 150 id. 519; *Parsons* v. *Copeland*, 38 Me. 537; *Holland* v. *Hodgson*, L. R. 7 C. P. 328; *Longbottom* v. *Berry*, L. R. 5 Q. B. 123; *Potter* v. *Cromwell*, 40 N. Y. 287; *McRae* v. *Bank*, 66 id. 289; *Hill* v. *Bank*, 97 U. S. 450; *Harlan* v. *Harlan*, 15 Pa. St. 507; *Roddy* v. *Buck*, 15 Stew. 218.

GREEN, HONORE & PETERS, and PECK, MILLER & STARR, for appellees:

In Illinois the rule is settled that the chief test in determining whether such articles of personalty are the property of the tenant in removal is that of intention. *Kelly* v. *Austin*, 46 Ill. 156; *Jones* v. *Ramsey*, 3 Ill. App. 313; *Sword* v. *Lord*, 122 Ill. 487; *Hewitt* v. *General Electric Co.* 164 id. 420.

The rule is more liberal in favor of the tenant, as between him and his landlord or lessor, than as between other parties, such as vendor and vendee, executor and heir. *Kelly* v. *Austin*, 46 Ill. 156; *Arnold* v. *Crowder*, 81 id. 56; *Grymes* v. *Boweren*, 6 Bing. 437; *Wiggins Ferry Co.* v. *Railway Co.* 142 U. S. 396.

As between landlord and tenant, removable trade fixtures include all erections made for the purposes of trade during the tenancy,—*e. g.*, soap vats; fire engines to work a colliery; pans used in manufacturing salt; brew houses; furnaces and coppers; green-houses, hot-houses erected by nurserymen and gardeners. *Moore* v. *Smith*, 24 Ill. 512.

Per CURIAM: We concur in the views expressed in the foregoing opinion of the Branch Appellate Court, which opinion will be adopted by this court, and the judgment will be affirmed.

*Judgment affirmed.*