## UNITED STATES v. 19.86 ACRES OF LAND IN EAST ST. LOUIS, ST. CLAIR COUNTY, ILL., et al.
### No. 8395.

Circuit Court of Appeals, Seventh Circuit.
March 16, 1944.

MAJOR, Circuit Judge.

This is an appeal from a judgment, entered April 27, 1943, dismissing a condemnation proceeding as to appellee, Jos. Greenspon's Son Pipe Corp., and a certain building located on the condemned land, ownership of which was claimed by it. The proceeding was instituted under authority of the Navy Appropriation Act of July 29, 1941, 55 Stat. 608, and the General Condemnation Act of August 1, 1888, Sec. 1, 25 Stat. 357, 40 U.S.C.A. § 257. The former Act authorizes the Secretary of the Navy to acquire lands with the approval of the President, and the latter Act confers upon any officer of the government, authorized to procure real estate for the erection of a public building or for other public uses, the right to acquire the same by condemnation.

The proceeding, commenced January 12, 1942, described 19.86 acres of land to be taken for Naval purposes in connection with the expansion of the Westcott Valve Company in East St. Louis. Title to the land at that time was in the Illinois State Trust Company and certain designated trustees who were made parties. There was located upon the land the factory building in controversy. On December 2, 1941, after considerable negotiation, a written agreement was executed by which appellee agreed to pay the sum of $5,000 for the building, title to be taken in the name of one Joseph Edlin as trustee. The agreement expressly provided that the sale covered only the materials of which the building was constructed, which constituted personal property, and that the sale was not "of any interest in the building or premises as real property." The rights of Joseph Edlin as trustee were assigned to appellee by written assignment dated December 27, 1941. Prior to appellee's agreement to purchase, the trustees had attempted without success to sell the lands and the building to Westcott Valve Company, which was producing valves for the Navy. The Valve Company agreed to purchase the land, provided the building was removed on or before February 10, 1942. Appellee, after its purchase of the building, commenced to dismantle and remove the materials therefrom in accordance with its written contract of December 2, 1941. On December 16, 1941, officers of the United States Navy Department requested appellee to cease dismantling and removing such

Ray M. Foreman, of Danville, Ill., George R. Schwarz, of Jerseyville, Ill., and Norman M. Littell, Vernon L. Wilkinson, Lawrence Vold, and Norman MacDonald, Dept. of Justice, all of Washington, D. C., for appellant.

Harold G. Baker and Leigh M. Kagy, both of East St. Louis, Ill. (Baker, Lesemann, Kagy & Wagner, of East St. Louis, Ill., of counsel), for appellee Jos. Greenspon's Son Pipe Corporation.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

materials. With this request appellee complied.

Appellee was not made a party to the condemnation proceeding until May 12, 1942. On October 21, 1942, the District Court entered an order entitled "Judgment and Decree of the Court," based upon a stipulation between the government and the Illinois State Trust Company, a corporation, and said trustees (owners of the fee), to which stipulation the appellee was not a party. It was recited in said judgment that the Trust Company and its trustees were the owners in fee simple of the lands sought to be condemned but that such interest was subject to the interest of appellee in and to certain improvements which were located upon the premises. It was recited in the judgment that the parties had agreed that $19,000 was just compensation for the unencumbered fee simple title to the lands with the improvements thereon, with the exception of appellee's interest in and to certain improvements. It was also recited that $5,000 had been deposited for the taking of such interest.

On December 18, 1942, appellee, by motion to dismiss, challenged the authority of the Secretary of the Navy to condemn the building in controversy, on the theory that it was personal property and therefore not within the terms of the Act relied upon. It is from the court's order sustaining this motion that the instant appeal comes. In allowing the motion, the court stated:

"And the Court having found that before the case was filed the building had been constructively severed from the soil and had become personal property owned by said Joseph Greenspon's Son Pipe Corporation and that the Government had notice or was put upon notice of such constructive severance prior to filing the case: Further the Government had no authority under the statute to take personal property under its right of eminent domain and therefore no authority to take the building in question which had theretofore become personal property."

Thus, the question for decision is whether the building was personal property so as to preclude the government from acquiring it under a statute authorizing the condemnation of real property. The government does not dispute that it had notice, prior to the commencement of the suit, of appellee's alleged ownership of the building. The government does contend, however, that such notice is immaterial.

Appellee contends that the character of the property, that is, whether it is real or personal, must be determined in accordance with local law. The government in its brief makes no mention of this point, but in oral argument before this court contended that the local law is without application since United States v. Miller et al., 317 U.S. 369, on page 379, 63 S.Ct. 276, on page 283, 87 L.Ed. 336, 147 A.L.R. 55, wherein the court said:

"We need not determine what is the local law, for the federal statutes upon which reliance is placed require only that, in condemnation proceedings, a federal court shall adopt the forms and methods of procedure afforded by the law of the State in which the court sits. They do not, and could not, affect questions of substantive right—such as the measure of compensation—grounded upon the Constitution of the United States."

We are of the view that this pronouncement does not support the government's contention. What the court evidently meant was that the forms and methods of procedure afforded by the law of the state do not affect questions of substantive right. That the character of property taken in condemnation is to be determined by local law seems to have been recognized in the subsequent case of United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, on page 279, 63 S.Ct. 1047, on page 1054, 87 L.Ed. 1390, wherein the court stated:

"Though the meaning of 'property' as used in § 25 of the Act and in the Fifth Amendment is a federal question, it will normally obtain its content by reference to local law."

We agree with the holding in United States v. Becktold Company, 8 Cir., 129 F.2d 473, 477, wherein the court, in a condemnation proceeding, stated:

"Whether or not these fixtures and machinery under the facts disclosed constituted a part of the realty was dependent upon the law of the State of Missouri, the lex loci rei sitae. This was a question of real estate law which must always be determined by the law of the state in which the realty is located." (Citing cases.)

The government, having taken the position that local law is not controlling, has given us no assistance in ascertaining the Illinois rule. Our own investigation, however, has convinced us that there is

no rule in Illinois as contended for by appellee. Certainly there is no case in point, and it is difficult to visualize how the instant question could get before an Illinois court, for the reason that both the Constitution of the State (Article II, § 13), Smith-Hurd Stats. and its Eminent Domain Act (Chap. 47, § 1), authorize the taking of private property, which includes both realty and personalty.

■ We need not cite authorities in support of the general and perhaps universal rule in Illinois and elsewhere that a building permanently connected with the soil is real property. Only a clear and pointed case would justify the conclusion that there is any limitation upon this general rule which would control in a proceeding of the instant character.

The principal cases relied upon by appellee are Chatterton v. Saul, 16 Ill. 149; Chicago & A. Railroad Co. v. Goodwin, 111 Ill. 273, 53 Am.Rep. 622; Sanitary District of Chicago v. Cook, 169 Ill. 184, 48 N.E. 461, 39 L.R.A. 369, 61 Am.St.Rep. 161; and Baker v. McClurg, 198 Ill. 28, 64 N.E. 701, 59 L.R.A. 131, 92 Am.St.Rep. 261. In the Saul case, the action was for replevin of a building placed upon the land by the tenant. The court recognized that under these circumstances a building might be regarded as personal property and removed by the owner. In the Goodwin case, the railroad erected certain structures upon its right of way, with the permission of the life tenant. Afterward, in a condemnation suit, the fee owner, Goodwin, claimed the right to be compensated for such buildings. In denying such claim, the court stated: "If a man erects a house upon the land of another with his consent, it will, if the builder has no title to the land, be the personal property of the builder. (Citing cases.) And it will so remain, though the land owner convey the land, and the owner of the building convey that, if to different persons." In the Baker case, the court was considering trade fixtures as between landlord and tenant, and made this statement (page 34 of 198 Ill., page 703 of 64 N.E., 59 L.R.A. 131, 92 Am. St.Rep. 261): "It has been held that a two-story house, with brick chimney and foundations, was so removable." It will be noted that in the Saul case, the Goodwin case and the Baker case, no question was involved affecting the rights of third parties. It also appears that what the court said in the Goodwin case, that a

building could be conveyed as personal property, was dictum; at any rate, the statement was unnecessary to a decision of the question before the court. In the Sanitary District case, the land and buildings were condemned. The value of the buildings was fixed separately and the litigation concerned the proceeds awarded therefor. The court held that the land owner was so entitled, although it implied that its decision would have been different if the tenant had reserved ownership of the buildings. Here again no third party was involved.

Not only do the cases referred to fail to sustain appellee's contention, but the Illinois authorities as a whole lead to a contrary conclusion. In Dobschuetz et al. v. Holliday et al., 82 Ill. 371, 374, the court stated:

"No doubt the parties could agree among themselves they would treat the engine and other fixtures as personalty, but their private agreement could not change the character of the property, so far as third parties were concerned." In Griffin et al. v. Marine Company of Chicago et al., 52 Ill. 130, the lessee erected an elevator building upon leased land, with an agreement that the building should be personal property and removable at the expiration of the lease. Subsequently, the leasehold estate and improvements were mortgaged. A judgment creditor of the lessee sought to levy upon the building as personal property. The litigation was between the mortgagee and the judgment creditor. The court decided in favor of the former and in so doing stated (page 138 of 52 Ill.): "The conclusive answer to this position is, that the property mortgaged was an actual interest in real estate, a chattel-real at the common law, falling under the definition of 'real estate,' given in the first section of our Statute of Judgments, and Executions, and, because immovable, possessing none of those attributes of personal property which have shaped the law in regard to the mortgage of such property." Knapp v. Jones, 38 Ill.App. 489, is another case wherein a lessee erected a building upon leased premises, with the right of removal. Here again, the litigation was between a mortgagor of the leasehold estate and a judgment creditor, and involved the question as to whether the building was real or personal property. In deciding it was the former, the court (page 495 of 38 Ill.App.) stated: "We think that question

settled, at least in this State, and that the property in question is a 'chattel real,' and under our statute is classed as real estate." This holding was affirmed by the Supreme Court (143 Ill. 375, 32 N.E. 382), wherein the court pointed out that it was not concerned with what might have been the rights of the lessee as between him and his lessor.

■ The most that can be said of these Illinois cases, so we think, is that the parties may for their own purposes consider a building as personalty. This does not mean, however, that it loses its essential characteristic as realty. This view is strengthened by a study of the State Revenue Act, Chap. 120, Illinois Revised Statutes, 1941, as it pertains to real and personal property. Par. 482(10) defines real property as "not only the land itself * * * but also all buildings, structures and improvements, and other permanent fixtures, of whatsoever kind, thereon * * *." Par. 524 provides for the assessment of real property by placing a valuation on improved tracts and lots in one column and unimproved tracts and lots in another column. It also provides that the value of lands and improvements shall be separately fixed. The Act makes no provision for the assessment of buildings other than as real property. It hardly seems likely that if a building could by agreement of the parties be changed from realty to personalty so as to be binding upon third parties, and especially the State, that some provision would not have been made for its assessment as personal property.

■ The contention that appellee as owner of the building could have sold it to a third party is rather beside the point. Even so, we are inclined to the view that a purchaser thereof would have taken the building as real property. But whether this be so or not, we are of the further view that the government in the exercise of its right of condemnation occupies a position different from that of a volunary purchaser. This is so for the reason that condemnation acts upon the res. The rule is stated in 10 R.C.L. Par. 12 (page 15) thus: "The power when exercised acts on the land itself, not on the title or the sum of the titles if there are diversified interests. On appropriation all inconsistent proprietary rights are divested and not only privies but strangers are concluded." A statement in Duckett & Co. v. United States, 266 U.S. 149, 151, 45 S.Ct. 38, 69

L.Ed. 216, is pertinent to the instant situation. The court stated: "Ordinarily an unqualified taking in fee by eminent domain takes all interests and as it takes the res is not called upon to specify the interests that happen to exist. Whether or not for some purposes the new takers may be given the benefit of privity with the former holders, the accurate view would seem to be that such an exercise of eminent domain founds a new title and extinguishes all previous rights."

■ We therefore reach the conclusion that the government was not bound by any agreement entered into between the owners of the fee and appellee concerning the building in controversy, and that the condemnation of the land included the building located thereon. It follows that the order of dismissal was erroneous and it is therefore

Reversed.