F. L. CARMICHALL and Ruth Carmichall, Appellants,

v.

UNITED STATES of America, Appellee.

UNITED STATES of America, Appellant,

v.

F. L. CARMICHALL and Ruth Carmichall, Appellees.

No. 17823.

United States Court of Appeals Fifth Circuit.

Jan. 6, 1960.

John A. Kerr, Fort Worth, Tex., for appellants.

Elizabeth Dudley, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., W. B. West, III, U. S. Atty., Fred L. Woodlock, Jr., Asst. U. S. Atty., Fort

Worth, Tex., S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

F. L. Carmichall and Ruth Carmichall, husband and wife, were the owners of a tract of 5.06 acres of land in Tarrant County, Texas, upon which they operated a lumber yard, a builder's supply business, and a concrete block manufacturing plant. The United States took the fee simple title to the land by the exercise of eminent domain for the purpose of providing additional facilities at Carswell Air Force Base. On the property and used in the Carmichall business were two concrete block machines; one of which was designated as the Columbia machine and the other as the Stearns machine. Both were so affixed and used as to make them a part of the freehold under the rules of law generally applicable. 19 Tex.Jur. 707, et seq., Fixtures §§ 3–9; United States v. Becktold Co., 8 Cir., 1942, 129 F.2d 473. The manufacturer of the Stearns machine had taken a mortgage on it and the equipment appurtenant to it from F. L. Carmichall to secure the unpaid purchase price. This instrument is designated as a "chattel mortgage" and it designates the property encumbered as "chattels." A provision is contained in the instrument that the "chattels" "shall not become part of the freehold." The mortgagee was given the right, upon default, to take possession of, remove, and sell the mortgaged property. In the operation of each machine sets of conversion parts and mold boxes could be used in the making of different shapes and sizes of blocks. The sets used with one machine could not be used with the other nor could they be used with any other machine without being adapted by precision machining.

The case was tried before the court with a jury. While on the stand, Carmichall was questioned by the court as to who owned the Stearns machine. He answered,

"I took the machine back, what I considered as salvage, took the machine and sent it back to Stearns and got another machine, a new machine."

He was asked, "Then you have a machine still being referred to as a Stearns machine?" Carmichall replied,

"Well, no sir, it is a new machine but you see, I understand under this business of taking that I have the right to take whatever property I want to if it is not to be used by the Government, as salvage, at their salvage figure, and I thought the taking included the machine because they took one machine and I don't see the distinction. But they took one machine and they say the other one they don't take. I thought they took both of them, and I considered that they did and when I removed the machines, and as Mr. Stone [the appraiser for the Carmichalls] said, took it out with a jackhammer, broke it out of the ground and so forth and so on, I considered I could have to pay for it if it was ultimately construed to be Government property under the taking, that obviously I would have to pay salvage value for it."

The court submitted special interrogatories to the jury as to the values of (1) the land, (2) buildings and improvements, (3) machinery and equipment, (4) the Stearns machine, (5) the mold boxes and conversion parts used with the Stearns machine, and (6) the mold boxes and conversion parts used with the Columbia machine. Separate values for each of the specified items were fixed by the jury. The court entered judgment, and in its judgment, recited that the Stearns machine, the Stearns mold boxes and conversion parts and the Columbia mold boxes and conversion parts were not so affixed to the land as to be a part of the realty, but were personal property not taken by the plaintiff. The court entered judgment for the amount found by the jury as the values, deducting from the jury's figure for machinery

and equipment the amount of the values found for the Stearns machine, and the mold boxes and conversion parts for both machines. Adjustments were made, in computing the amount of the judgment, for a tax obligation and for stipulated amounts for certain items of property, the title to which had been revested by an order of the court in the Carmichalls. The Carmichalls have appealed from the judgment asserting that it was error to hold that the Stearns machine and the conversion parts and molds were not part of the real estate taken by the condemnation.

Testimony as to the values of the property was given by two witnesses, R. Donald Stone, called by the Carmichalls, and D. L. Donahue, called by the Government. The valuations placed by Stone were, with de minimus exceptions, higher than those given by Donahue. Stone's testimony was given in considerable detail, and the various items of machinery were separately valued by him. His valuation formula was reproduction cost less depreciation, and this basis for determining just compensation is not questioned by the Government. The Government has challenged, however, Stone's total of his itemization of valuations of the machinery and equipment and asserts that an error in addition was made.

Whether the Stearns machine and the mold boxes and conversion parts were real estate or personalty is to be determined by the law of the state where they were located. United States v. Becktold Co., supra. The general rule for making the test in Texas is to be found in an early and much cited opinion of the Supreme Court of that state, in which it is said:

"The weight of modern authorities establishes the doctrine that the true criterion for determining whether a chattel has become an immovable fixture consists in the united application of the following tests:

"(1) Has there been a real or constructive annexation of the article in question to the realty?

"(2) Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected?

"(3) Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold; this intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and purpose or use for which the annexation is made.

"And of these tests preeminence is to be given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence of the intention." Hutchins v. Masterson, 46 Tex. 551, 554, 26 Ann. Rep. 286. See 19 Tex.Jur. 708, et seq., Fixtures § 5, and cases there cited.

It is contended by the Government that the provision in the chattel mortgage, hereinbefore quoted, shows the intention with which the machine was affixed and the intention as evidenced by the agreement must control. As between the mortgagor and mortgagee, as in the case of lessor and lessee, the contractual provision may be effective. This principle, applicable as between the parties to an agreement, is not appropriate in a condemnation proceeding so far as fixing, as between Government and landowner, the character of fixtures annexed to the land. Burkhart v. United States, 9 Cir., 1955, 227 F.2d 659; United States v. 19.86 Acres of Land, 7 Cir., 1944, 141 F.2d 344, 151 A.L.R. 1423. It is not anywhere suggested that the Columbia machine was not part of the freehold and taken by the Government as a part of the land. There is no different principle to be applied with respect to the Stearns machine. The Government condemned the fee simple title to the land. The evidence, without conflict, showed the Stearns machine to be a part of the freehold.

For the Government it is said that the question as to whether or not the conversion parts and mold boxes were part of the real estate and hence included in the taking is one of fact which we will not review. The Government concedes that the accessories are not usable on other machines but says that they can be adapted to such use and are therefore personal property. This syllogistic approach embodies an erroneous conception of the law. The principle is thus stated:

"The doctrine of constructive annexation has frequently been applied in the case of articles which are not themselves actually or directly annexed to the realty, but are part of, or accessory to, articles which are so annexed. Thus, where the principal part of the machinery is a fixture due to actual annexation to the realty, the parts of it, although not actually annexed to the freehold, are fixtures where they would, if removed, leave the principal part unfit for use, and where of themselves they are not capable of general use elsewhere. Conversely, where the nonannexed article is complete and capable of separate and independent operation, it does not constitute a fixture. The following articles have been declared to be fixtures under the rule of constructive annexation; loom beams in a cotton mill which are essential parts of the looms; electric motors essential to the operation of pumps used to irrigate land; shafting, belting and pulleys used to transmit motive power from an engine to machinery; lathes essential to the operation of a garage; machinery incidental to polishing granite; machinery necessary to the cannery business, such as crates, capping machines and worktables; boilers and engines intended for use in a mill; spike machines intended to be placed and permanently used in a rolling mill; ice in an icehouse on premises sold for hotel purposes; a detachable chain which is part of machinery; machinery or parts thereof temporarily severed but intended to be reannexed; and keys to a building." 22 Am.Jur. 793, Fixtures § 72.

The accessorial articles had no value, except as scrap, unless used in connection with a blockmaking machine. The machines could not be operated without the mold boxes and conversion parts. Although, by precision machining, these parts could be adapted to use in other blockmaking machines, it can hardly be said that they are capable of general use. The determination of the district court that the "mold boxes and conversion parts were not so affixed to the land as to be a part of the realty" is clearly erroneous whether it be regarded as a finding of fact or conclusion of law.

It follows, from what has been said, that the Stearns machine, the Stearns mold boxes and conversion parts and the Columbia mold boxes and conversion parts were a part of the real estate at the time of the taking and for these the Carmichalls are entitled to compensation. In fixing that compensation the district court may review the evidence, particularly as to the Columbia mold boxes and conversion parts. The jury determined the value of these to be $10,-950. Our reading of the record leaves us with a doubt whether there is any evidence to warrant the finding of value in this amount. The trial court should also consider the amount by which the award for these items should be reduced by reason of the Carmichalls having removed some of them during the condemnation proceedings. Mr. Carmichall testified that it was his understanding that if these removed items were found to be a part of the realty he would have to pay the salvage value for them. Whether his "understanding" was agreed to by anyone empowered to bind the Government is not shown.

It is apparent that the jury intended to base its verdict on the appraisals of the witness Stone. He testified as to the value of each item of machinery and equipment. The total of these separate figures is $122,510. He was examined,

cross-examined and re-examined at length. The final question on his re-direct examination was:

"Just one more question, Mr. Stone. Please refer to your records and let me have your net value of the replacement of the machinery alone, less depreciation, upon the date you made your inspection, the total figures."

The witness replied:

"Yes sir, be glad to. The total figures which I found of reproduction cost new less depreciation for the machinery and equipment on February 19, 1958, was $143,525.00."

Earlier in his testimony the witness had said the valuations should be reduced by the amount of $2,580 as the value of certain equipment for which the Carmichalls were not claiming compensation. Reducing the Stone total by the Stone credit we have left, in round figures, $141,000. The values fixed by the verdict of the jury for all of the machinery and equipment was $141,000. The Government by timely and appropriate attack in the district court, asserted that there was no evidence to sustain this portion of the verdict and of the judgment entered upon it. The same assertions are here made by the Government on cross-appeal.

The Carmichalls rest upon the jury verdict and point to the Seventh Amendment to sustain their position that we cannot upset the jury's determination of the fact question of valuation. It is not here contended that the machinery and equipment, in the aggregate, have a value of an amount in excess of the value of the several separate items of which the aggregate is comprised. The aggregate valuation was intended to be the total of the items aggregated, and there was no intention of the witness nor was there any instruction which would have permitted the jury to ascribe greater value to the whole than the sum of the value of the parts. We are relieved of considering whether a mathematical formula can be a rule of law. Cf. Dunlop v. Teagle, 101 Fla. 721, 135 So. 132. There is no

evidence to sustain the award for machinery and equipment for the amount of the verdict and judgment and there must be a different award which has evidence to support it. Texas Company v. Savoie, 5 Cir., 1957, 242 F.2d 667; McNamara v. American Motors Corporation, 5 Cir., 1957, 247 F.2d 445; Aetna Life Insurance Co. of Hartford, Conn. v. Stokes, 5 Cir., 1958, 252 F.2d 383.

The judgment of the district court is reversed and the cause is remanded for further proceedings in keeping herewith.

Reversed and remanded.