**Decided   December 21, 1984**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

COMMONWEALTH OF THE NORTHERN )          CIVIL ACTION NO. 84-351
MARIANA ISLANDS,                      )
                                      )
              Plaintiff,              )
                                      )          MEMORANDUM DECISION
        vs.                           )                 AND
                                      )                 ORDER
JOVITA EMILE NABORS,                  )
                                      )
              Defendant.              )
                                      )

The defendant has filed a motion to strike Paragraph IV of the complaint because, it is argued, the Commonwealth, though the condemning entity, is condemning the land for U.S. military purposes pursuant to the Covenant[1] and since only a leasehold interest of 50 years plus a 50 year option is to be given the U.S., the Commonwealth can not acquire by condemnation anything more than the leasehold rights to the land. Paragraph IV of the Complaint states that a fee simple interest is to be acquired.

---

[1]The term "Covenant" refers to the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, 90 Stat. 263, Note to 48 U.S.C. Sec. 1681 (1982).

Section 802 of the Covenant provides that certain land within the Commonwealth, including the land involved in this matter shall be made available to the Government of the United States. Section 803 provides that the Government of the Northern Mariana Islands shall lease the property to the United States for a term of fifty years and with an option vested in the latter to renew the lease for an additional fifty years.

The United States has paid or deposited the funds required of it to lease the property. Through negotiations and settlement the Government of the Northern Mariana Islands has acquired all private interests except the parcel involved here and several others. In order to acquire the remaining private interests, this suit and nine others have been filed in this court.[2]

The Commonwealth filed this action (and the others) pursuant to its authority found in Article XIII of the Constitution of the Northern Mariana Islands and as codified at 1 CMC §§ 9211-9229.

The condemning entity is the Commonwealth and not the United States. The Commonwealth condemns the land in order for it to comply with its obligations to lease the land to the United

---

[2] In eight cases, a petition to remove the matters to the Federal District Court, Mariana Islands was made but this petition was denied. Commonwealth of the Northern Mariana Islands v Hofschneider, et al, Civil Actions 84-0010 through 84-0016 and 84-0017.

States pursuant to Section 803(a) of the Covenant.[3] In leasing the land from the Commonwealth, the United States will be able to carry out its military defense responsibilities. Section 802(a), Covenant.

Defendant questions the public purpose of this condemnation action since the purpose is not for a public use by the Commonwealth and that the determination of "public purpose" was made by the Governor and not by legislative resolution.

The eminent domain provisions found in Article XIII of the Constitution and 1 CMC 9213(b) easily dispose of any such question. The latter section states that "Public use shall be construed to cover any use determined by the Governor to be a public use."

Though this broad mandate could be subject to abuse and possible judicial prohibition in an exaggerated determination of "public use", it is clear that the determination made by the Governor in this case is well within the parameters of Article XIII of the Constitution and 1 CMC 9213(b).

Public use determinations, such as the one made by the Governor here, are subject to an "extremely narrow" scope of judicial review. The test is whether the exercise of the eminent

_____

[3] In _Commonwealth of the Northern Mariana Islands v Hofschneider, et al_, supra, the argument was made that the condemnation proceeding was for the use of the United States pursuant to 28 U.S.C. 1358 (and therefore an action which arises under "Constitution, laws or treatise of the United States" within 28 U.S.C. 1331) and that the Commonwealth was merely acting as an agent of the United States. Both of these arguments were rejected by the District Court. This court agrees with the conclusions of the District Court.

20

domain power is rationally related to a conceivable public purpose. Hawaii Housing Authority v Midkiff, 104 S.Ct. 2321 at 2329; Berman v Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); Old Dominion Co. v United States, 269 U.S. 55, 46 S.Ct. 39, 70 L.Ed. 162 (1925).

As pointed out by the government, not only has the Governor made his determination pursuant to 1 CMC 9213(b) but the Covenant itself was approved by a 78.8% plebiscite vote. Though no determination of public use was made by the legislature of the Commonwealth (since under the current law it is not required) the people of the Commonwealth have given their strong approval of use of the land by the United States for defense purposes.

The fact that the condemning entity (Commonwealth) is condemning the property for use by another political entity (United States) does not invalidate the proceeding. 26 AmJur 2d, Eminent Domain, § 12; 143 ALR 1042.[4]

The use the land is to be put to is for national defense purposes. Use of the property for national defense (being for all the people under the U.S. flag) is clearly for the use of the

---

[4]For an apparently contrary view, by way of dictum, see Kohl v United States, (1875) 91 U.S. 367, 23 L.Ed. 444. However, the general rule, indeed overwhelming rule, supports the proposition that a state of the union can condemn land for Federal use. Some courts emphasize that the state must be able to condemn the land on its own behalf and without regard to the power of eminent domain vested in the federal government. This, of course, presents no barrier to the Commonwealth's condemnation action here. Additionally, Hawaii Housing Authority v Midkiff, supra, at 104 S.Ct. pp. 2330-2332 puts this issue to rest. In that case the land condemned is to be transferred to private beneficiaries.

people of the Commonwealth as they benefit from the protective umbrella of the U.S. defense system. When these facts are coupled with the obligations of the Commonwealth in the Covenant, the public use or purpose provision is satisfied as contemplated in the Constitution and the Code.

The main thrust of defendant's argument goes to the type of interest to be condemned. Since it is clear the United States will have no further lease rights after 100 years (assuming the exercise of its option after 50 years), is it permissible nonetheless for the Commonwealth to condemn a fee simple interest?

Defendant argues that for the Commonwealth to condemn anything other than a leasehold interest violates Article 6 of the United Nations Trusteeship Agreement for the Former Japanese Mandated Islands and that neither the Covenant nor the Technical Agreement attached to the Covenant provide for the taking of a fee interest by the Commonwealth.

Article 6 of the Trusteeship Agreement provides that the Administering Authority (the U.S.) shall, inter alia, protect the inhabitants against the loss of their lands. The defendant has provided various excerpts from the history of the formation of this Article, the essence of which is that the United States would not appropriate, control or take land for its own gain and that it would recognize the special value that land has to the Trust Territory people.

22

Thus, defendant argues, the Trusteeship Agreement constrains the United States from taking any more land area or land interest than that which is required.  See also Covenant, § 806(a).

These arguments certainly do not lack appeal when considering the scarcity of land in the Commonwealth and the professed obligation of the U.S. to safeguard the land of the inhabitants of the Trust Territory/Commonwealth.

However, the government points out the obvious.  The Trusteeship Agreement is between the United Nations and the United States, not the Commonwealth.  It is the latter which is condemning the fee.[5]  Upon termination of the leasehold rights of the United States, the land reverts to the Commonwealth as public land for the benefit of the inhabitants of the Commonwealth.

■ There exists a question as to how much the Trusteeship Agreement has "atrophied" since the Commonwealth constitutional government was installed on January 9, 1978 in the Northern Mariana Islands.

---

[5]To implement the transfer of land to the United States, a Land Acquisition Agreement (Reprinted at pp C-501 to 506, Commonwealth Code) was entered into by the Commonwealth and the United States.  This document states that the Commonwealth shall acquire a fee interest.  A July, 1984 Amendment provided that the Commonwealth must file any necessary condemnation actions on or before a certain date which was not done in this case.  Defendant argues this agreement ·expired by its own terms prior to the commencement of the action.  The court fails to see how this affects this action.  There has been no showing that the United States does not wish the Commonwealth to proceed with this action or that this action is meaningless because it was filed a few days later than the Agreement states.

Technically, the Commonwealth is still within the Trust Territory as it has been the professed policy of the United States to not ask the United Nations to terminate the Trusteeship Agreement in a piecemeal fashion. On the other hand, as far back as March 24, 1976 when Secretarial Order 2989 (reprinted pp B-201 to 212, Commonwealth Code) was issued, the Northern Mariana Islands, for almost all purposes, has been legislatively, politically, and administratively separated from the rest of the Trust Territory. One of the few exceptions was the judiciary, but when the Constitution for the Commonwealth became effective upon the Proclamation of the President of the United States, all substantive and meaningful relationships of the Commonwealth with the rest of the Trust Territory ceased.[6]

When all of these factors are considered, it becomes clear that whatever force and effect Article 6 of the Trusteeship Agreement has in the Commonwealth, it is not determinative of defendant's motion. What is determinative are the documents which provide for the taking and leasing of the land.

---

[6]For a similar conclusion see Temengiil v Trust Territory of the Pacific Islands, et al, No. 81-0006 (D.N.M.I. March 23, 1983). Defendant counters with a prior District Court case Marianas Fisheries Inc., et al v Juanita M. Kreps, et al, No. 79-0031 (D.N.M.I. December 12, 1980) in which the District Court stated in a footnote that the Trust Territory of the Pacific Islands continues to exist as the official governing body of the Northern Mariana Islands until termination of the Trusteeship Agreement. Citing 48 U.S.C. 1681, 2989 Article X of the Covenant and Schedule on Transitional Matters. This court views this footnote as no binding authority for defendant's position and certainly not a reflection of the facts nor does it go to resolving the questions before the court.

24

Counsel have pointed out that the Covenant is silent as to whether the taking by the Commonwealth is to be a fee interest or to be the same leasehold interest which is made available to the United States.

■ The Technical Agreement Regarding Use of Land to be Leased by the United States in the Northern Mariana Islands provided for in § 803c of the Covenant is more enlightening. Section 3 of the Technical Agreement provides in part that the Commonwealth Government will be responsible for removing all encumbrances or any adverse possession claims of the lands leased to the United States. This cannot be done unless a fee is condemned since an acquisition of a leasehold interest (if possible) would not go to acquiring the underlying title. A fee simple taking is an unqualified taking and it takes all interests and takes the res. The fee taking finds a new title and extinguishes all previous rights.

A.W. Duckett & Co. Inc., v U.S., 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216; Restatement, Property, § 565, Comment d; Restatement, Property, §§ 507, 565(1).

■ Section 4 of the Technical Agreement provides that should the United States finds it does not need some of the leased land, the Government of the Northern Mariana Islands will be given the first opportunity to acquire the interest of the Government of the United States. Thus there is no provision for automatic reversion to the original landowners.

Section 5, provides for a leasehold of some of the land to the Commonwealth Government and subsection (5) of Paragraph A obligates the Government of the Northern Mariana Islands to "acquire the land" and provide that private landowners will be afforded the opportunity to obtain exchange land "as a result of their displacement." If a landowner/lessor is given exchange land, he would end up owning two parcels should a fee not be taken.

Additionally, relocation compensation is available to the landowners and upon request the United States "...will, on a case-by-case basis ... lease it back to those _former_ owners" at a nominal rental. (emphasis added)

When all of these provisions are read together, it becomes clear that a fee simple acquisition by the Commonwealth was contemplated if not mandated in the Technical Agreement.

The Section by Section Analysis of the Covenant noted that the "right of first refusal" found in Paragraph 4 of the Technical Agreement "... assures that the people of the Northern Marianas, acting through their government ..., can regain the land when it is no longer needed by the United States." (page 104, Covenant Analysis) This same interpretation is found in Article XI, Section 1 of the Constitution which defines public lands and includes in that term those lands "... as to which right, title or interest have been or hereafter are transferred to or by the government of the Northern Mariana Islands under Article VIII of the Covenant, ..."

26

If defendant's position is accepted, the Commonwealth could condemn only a 50 year lease plus a 50 year option contingent upon the exercise of the option by the sub-lessee, the United States. This unique taking would raise questions as to how to compute fair valuation and the future reversionary rights of the various parties.[7]

The judiciary must and does grant deference to the policy decision of the Governor in determining the interest to be taken. To take a fee simple interest in this case is not an excessive taking. It is well within the powers of the condemning authority to exercise its rights under the Covenant, Constitution, and the Code.

The court finds no legal impediment to the taking requested by the Commonwealth and therefore,

---

[7]Not only will a fee simple taking divest all inconsistent proprietory rights as the condemnation acts upon the res (United States v 19.86 acres of Land, (CA7 Ill) 141 F.2d 344, 151 ALR 1423), it eliminates future questions as to when and how the property reverts upon the termination of the lease or the failure of the U.S. to exercise its option. With fee title, the Commonwealth is the landlord and the U.S. is the tenant. The legal quagmire of determining the status of the defendants. the Commonwealth, and the U.S. in the event of leasebacks, etc., is avoided. At argument, defendant's counsel also alluded to the fact that with a leasehold condemnation, the owner (defendant) will possibly be able to claim additional compensation during the lease term for additional or different use of the property than originally contemplated. Should this be the case, the benefits to the Commonwealth of condemning a fee becomes abundantly clear.

27

IT IS ORDERED that defendant's motion to strike the Commonwealth's request to take a fee simple interest in the subject property is Denied.

Dated this 21st day of December, 1984.

Robert A. Hefner, Chief Judge